UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LINDA MARIE SEEKINS,
     - Plaintiff

    v.                          CIVIL NO. 3:11CV00264(VLB)(TPS)

MICHAEL J. ASTRUE,
COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,
     - Defendant

## MAGISTRATE JUDGE'S OPINION

The plaintiff, Linda Marie Seekins, brings this appeal under §§ 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), as amended, 42 U.S.C. §§ 405(g) and 1383(c), seeking review of a final decision by the Commissioner of the Social Security Administration ("SSA") denying her applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). The plaintiff has moved for an order reversing the Commissioner's decision or, in the alternative, for an order remanding the case back to the Commissioner for further proceedings **(Dkt. #21).** The defendant has moved for an order affirming the decision. **(Dkt. #27).** For the reasons stated below, the plaintiff's motion should be **DENIED.** The defendant's motion to affirm should be **GRANTED.** 28 U.S.C. § 636(b)(1)(A).

## I.  STANDARD OF REVIEW

In reviewing a final decision of the Commissioner under 42 U.S.C. §§ 405(g) and 1383(c), the district court performs an appellate function.  Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981); Igonia v. Califano, 568 F.2d 1383, 1387 (D.C. Cir. 1977).  A reviewing court will "set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998).  See also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)("As a general matter, when we review a decision denying benefits under the Act, we must regard the [Commissioner's] factual determinations as conclusive unless they are unsupported by substantial evidence")(citations omitted). "Substantial evidence" is less than a preponderance, but "more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  See Yancey v. Apfel, 145 F.3d 106, 110 (2d Cir. 1998); Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340

U.S. 474, 488 (1951).  See also New York v. Sec'y of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990)(stating that the court, in assessing whether the evidence which supports the Commissioner's position, is required to "review the record as a whole")(citations omitted).  Still, the ALJ need not "reconcile every conflicting shred of medical testimony."  Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981).  In sum, "the role of the district court is quite limited and substantial deference is to be afforded the Commissioner's decision."  Morris v. Barnhardt, 02 Civ. 0377 (AJP), 2002 U.S. Dist. LEXIS 13681, at *12 (S.D.N.Y. July 26, 2002).

The regulations promulgated by the Commissioner establish a five-step analysis for evaluating disability claims.  Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987); 20 C.F.R. §§ 404.1520, 416.920.  First, the Commissioner considers if the claimant is presently working in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If not, the Commissioner next considers if the claimant has a medically severe impairment.  Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the severity requirement is met, the third inquiry is whether the impairment is listed in Appendix 1 of the regulations or is equal to a listed impairment.  Id. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); Pt. 404, Subpt. P. App. 1.  If so, the

disability is granted.    If not, the fourth inquiry is to determine whether, despite the severe impairment, the claimant's residual functional capacity allows him or her to perform any past work.   Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   If a claimant demonstrates that no past work can be performed, it then becomes incumbent upon the Commissioner to come forward with evidence that substantial gainful alternative employment exists which the claimant has the residual functional capacity to perform.   Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the Commissioner fails to come forward with such evidence, the claimant is entitled to disability benefits.   Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990); Berry, 675 F.2d at 467.

While the claimant bears the burden of proving the first four steps, the Commissioner must prove the final one.   Berry, 675 F.2d at 467.   Thus, if the claimant is successful in showing that he is unable to continue her past relevant work, "the [Commissioner] then has the burden of proving that the claimant still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy.   Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).

## II.   DISCUSSION

### A.   Procedural History

A hearing was held on the plaintiff's applications for benefits on September 14, 2009. (Tr. 1087-1119). The ALJ issued an unfavorable decision on October 14, 2009. (Tr. 34-47). The Decision Review Board vacated and remanded that decision on January 15, 2010, and ordered the ALJ to obtain "supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." (Tr. 767-768). A new hearing was held on March 30, 2010. (Tr. 1120-46). On September 23, 2010, the ALJ again issued an unfavorable decision, which was affirmed by the Decision Review Board on December 22, 2010. (Tr. 15-33, 10-14). The case is now properly before the Court.

**B.   The ALJ's Decision**

The facts are familiar to the parties, and the Court will not repeat them in depth. In summary, at Step 1 of her September 23, 2010 opinion, the ALJ found the plaintiff had not engaged in substantial gainful activity since September 30, 2007, the alleged onset date. (Tr. 21). At Step 2, the ALJ found the plaintiff had the following severe impairments: small white matter lesions on her brain; Raynaud's Disease; sinus tachycardia; tremor; bilateral peripheral vascular disease; anxiety and depression. (Tr. 21-24). At Step 3, the ALJ determined the plaintiff's impairments did not meet or equal one

-5-

of the listed impairments in 20 C.F.R. Part 404, Subpart P,
Appendix 1.  (Tr. 24-26).  The ALJ next found the plaintiff's
residual functional capacity to be as follows:

> ...the claimant is able to: lift or carry up to 20
> pounds; lift or carry up to 10 pounds frequently; sit,
> stand, or walk approximately 6 hours of an 8-hour day.
> The claimant is limited to only occasional bending,
> stooping, twisting, squatting, kneeling, crawling,
> climbing and balancing.  The claimant is not able to
> engage in frequent overhead reaching or manipulation
> with her left non-dominant upper extremity.  Further,
> the claimant must avoid hazards, such as working at
> heights or operating dangerous moving machinery, and
> should also avoid working at temperature extremes.
> From a mental health standpoint, the claimant is able
> to understand, remember and carry out simple, routine
> and unskilled instructions.

(Tr. 26).  Based on this assessment and relying on the testimony
of a vocational expert, the ALJ found at Step 4 that the
plaintiff was unable to perform her past relevant work.  (Tr. 31,
241-252).  The burden, therefore, shifted to the defendant to
come forward with evidence that substantial gainful alternative
employment exists which the claimant has the residual functional
capacity to perform.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v).  In response to hypothetical questions posed by
the ALJ via interrogatories, the vocational expert identified
three representative occupations that the plaintiff could perform
in light of her residual functional capacity.  (Tr. 32, 241-242,
246-248).  Relying on the interrogatory responses of the

vocational expert, the ALJ determined that the plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 32). Accordingly, the ALJ held that a finding of "not disabled" was appropriate under the Act. Id.

**C.   Alleged Errors by the ALJ**

As discussed above, a reviewing court will "set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). The Court will address each of the alleged errors raised by the plaintiff in support of her Motion to Reverse.

**1.   Whether the ALJ Failed to Find Certain Impairments To Be "Severe"**

The plaintiff first alleges that the ALJ failed to find "a number" of the plaintiff's impairments to be severe. Specifically, the plaintiff argues that the ALJ committed reversible error by not finding Lyme disease, irritable bowel syndrome, migraine headaches, and post-traumatic stress disorder (PTSD) to be severe impairments. An impairment or combination of impairments is severe if it significantly limits [a claimant's] physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). The plaintiff bears the

burden of establishing that her medically determinable impairments caused such limitations. 20 C.F.R. §§ 404.1512, 404.1520(c), 416.912, 416.920(c). The ALJ determined that "the symptoms associated with her Lyme's [sic] Disease, which may overlap with her vascular conditions, and Irritable Bowel Syndrome are sporadic and her objective findings [were] often normal, inconclusive or minimal. The claimant's migraine headaches have resolved with treatment." (Tr. 24).

Substantial evidence supports the ALJ's conclusion that Lyme Disease was only a sporadic ailment affecting the plaintiff. In fact, the plaintiff did not even allege that Lyme disease was an impairment that limited her ability to work. (Tr. 192). When the plaintiff was asked to identify her symptoms from Lyme disease, she stated that it caused "chills" and "muscle aches" when she "use[s] [her] legs for anything," such as "walking up and down the stairs, pushing vacuums or pulling them". (Tr. 1143). However, the plaintiff did not indicate that the "chills" or "muscle aches" limited or prevented her from performing these or other basic work activities. Furthermore, as explained by the ALJ, objective findings regarding Lyme disease were often inconclusive or normal. A lumbar puncture test recommended by the plaintiff's doctor was negative for Lyme disease and serology tests for Lyme disease were negative in February 2009. (Tr. 425,

-8-

427, 567).  The record indicates that the plaintiff was bitten by an insect in June 2009, subsequent blood work revealed positive CNS Lyme serology, and she received treatment. (Tr. 646-647, 674-675, 962).  However, the plaintiff has not met her burden of establishing significant work related limitations as a result of Lyme disease.

Substantial evidence also supports the ALJ's finding that the plaintiff's symptoms of irritable bowel syndrome were sporadic, and the objective findings were "normal, inconclusive, or minimal." (Tr. 24).  To be severe, an impairment must last or be expected to last for at least twelve months.  See 20 C.F.R. §§ 404.1509, 416.909.  In September 2008, the plaintiff complained to Dr. Moalli that she was under great distress, had been unable to eat, had been having frequent bowel movements and diarrhea, and had lost fifteen pounds.  (Tr. 417).  Dr. Moalli suggested irritable bowel syndrome, and she was referred to Dr. John Frese for an evaluation and colonoscopy.  (Tr. 507, 548, 661).  On October 23, 2008, Dr. Frese stated that the plaintiff's symptoms were "suggestive of, but not diagnostic of" irritable bowel syndrome.  (Tr. 507).  Dr. Frese scheduled the plaintiff for a colonoscopy, but she cancelled twice and did not show up on the third scheduled visit.  (Tr. 507, 548, 661).  Dr. Frese also noted that the plaintiff's "blood work came back and was normal."

-9-

(Tr. 507).  At her hearing, she testified that her weight loss occurred over a four to five month period when she had diarrhea. (Tr. 1110).  The plaintiff's weight stabilized and she no longer has problems with diarrhea (Tr. 1110-11).  Thus, substantial evidence supports the ALJ's determination that the plaintiff's irritable bowel syndrome was not severe, as the impairment did not satisfy the twelve month durational requirement.  See 20 C.F.R. §§ 404.1509, 416.909; see also DeJesus v. Astrue, No. 3:10-cv-705 (CFD)(TPS), 2011 WL 2076447, at *3 (D. Conn. May 26, 2011).

The plaintiff also argues that the ALJ erroneously found that her migraine headaches were not severe impairments.  In February 2008, the plaintiff had a marked reduction in headaches after beginning Topamax.  (Tr. 301).  In October 2008, Dr. Moalli indicated that the plaintiff's headaches were under fair control. (Tr. 548).  At the hearing before the ALJ on September 14, 2009, the plaintiff testified that her migraines have become less frequent and that she has them "a couple times a month" and that they usually last "about a day and a half to two days."  (Tr. 1115).  In December 2009, the plaintiff stated that her headaches occurred approximately three times per month.  (Tr. 982).  Thus, the issue is whether the plaintiff's migraines significantly limited her ability to perform basic work activities.  See Social

-10-

Security Ruling (SSR) 96-3p.  As addressed below, when assessing the plaintiff's credibility, the ALJ found "a multitude of chronic but medically unsupported symptoms."  (Tr. 31). Furthermore, the plaintiff did not even allege migraines as a functionally limiting impairment during the second hearing before the ALJ.  (Tr. 1122-45).  Substantial evidence supports the ALJ's conclusion that the migraines resolved with treatment and did not impose functionally limiting effects on her ability to do basic work activities.

With respect to the claim of PTSD, it is only mentioned by Dr. Pathman in March of 2009 in conjunction with the plaintiff's depression, and again in a report dated May 19, 2010.  (Tr. 626, 1004).  However, Dr. Pathman declined to assess whether the plaintiff had any mental health issues that affect her ability to work, noting that a psychologist would need to be consulted. (Tr. 998).  There is no other evidence in the record with regard to PTSD.  The plaintiff has failed to demonstrate that PTSD has significantly limited her ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Thus, there was substantial evidence for the ALJ to conclude that Lyme disease, irritable bowel syndrome, migraine headaches, and PTSD were not severe impairments.

**2.   Whether the ALJ Failed to Follow the "Treating Physician Rule"**

The plaintiff next argues that the ALJ violated the treating physician rule by giving limited weight to the opinions of Dr. Pathman, and rejecting the opinions of Dr. Radin and Dr. Moalli that the plaintiff was disabled.   The treating physician rule requires that the SSA "give more weight to opinions from your treating sources. . . ."   20 C.F.R. § 404.1527(d)(2).   The SSA will give the treating physician's medical opinion controlling weight if it concerns "the nature and severity of [the plaintiff's] impairment, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."   Id. see Stanton v. Astrue, 370 Fed. App'x. 231, 234 (2d Cir. 2010).   The ALJ may consider several factors when evaluating how much weight to assign to a treating physician's opinion, including the length and nature of the treatment relationship, frequency of examination, his or her specialization, and the supportability and consistency of the opinion.   20 C.F.R. §§ 404.1527, 416.927.

Here, the ALJ assigned "limited weight" to Dr. Pathman's opinions because the doctor "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the

-12-

claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." (Tr. 29). Dr. Pathman identified the plaintiff's diagnoses as Raynaud's disease, dizziness, and tachycardia, and opined that she could frequently lift or carry ten pounds, and sit, stand and walk for less than one hour each in an eight-hour day (Tr. 29, 995-1002). However, the ALJ explained that the significant limitations contained in Dr. Pathman's opinion were inconsistent with his treatment notes, which "fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact as significantly limited as described by the doctor." (Tr. 29). See 20 C.F.R. §§404.1527(d)(3), 416.927(d)(3) ("the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"; 20 C.F.R. §404.1527(d)(4), 416.927(d)(4) (consistency with the record as a whole is a key factor in assessing medical opinion evidence). The ALJ cites this lack of supporting medical signs and laboratory findings and inconsistencies with the record as a whole as his reasons for assigning limited weight to Dr. Pathman's opinions. (Tr. 27-31). Furthermore, as discussed below, there was proper support for the ALJ's conclusion that the plaintiff was not fully credible concerning the intensity, persistence and limiting

-13-

effects of her symptoms. (Tr. 27). Substantial evidence supports the ALJ's decision to assign limited weight to Dr. Pathman's opinions.

The plaintiff also claims that the ALJ erred by not addressing Dr. Pathman's May 19, 2010 evaluation. (Tr. 1003-06). However, remand is unnecessary, even if the ALJ ignores a treating physician's opinion, when the opinion is essentially duplicative of evidence considered by the ALJ, and the report the ALJ overlooked was not significantly more favorable to the plaintiff. See Zabala v. Astrue, 595 F.3d 402, 409-10 (2d Cir. 2010). Both the undated (Tr. 995-1002) and dated (Tr. 1003-06) sets of records refer to the plaintiff's most recent examination as being in March 2010. (Tr. 996, 1004). Dr. Pathman's May 19, 2010 opinion that the ALJ failed to address (Tr. 1003-06) was not significantly more favorable to the plaintiff than the undated report (Tr. 995-1002) because the undated report contained substantially the same information, only with more detail. Thus, the ALJ's failure to consider the May 19, 2010 opinion constitutes harmless error.

The plaintiff also claims that the ALJ improperly assigned little weight to Dr. Radin's March 17, 2008 statement that the plaintiff is "[d]isabled for work from 3/14/08 until medically cleared" because there is no evidence to support the ALJ's

conclusion that a separate undated statement from Dr. Radin, expressing his belief that the plaintiff does not have a medical condition preventing her from working, was more recent. (Tr. 30, 272, 566). The undated opinion was contained in records identified as falling between February 26, 2009 and June 6, 2009. (Tr. 557-567). There is no evidence of Dr. Radin treating the plaintiff prior to March 17, 2008 (Tr. 272) and the plaintiff testified at the September 14, 2009 hearing that she had "only seen Dr. Radin twice, since Dr. Moali had left." (Tr. 1096). Thus, the ALJ's conclusion that the undated note "appear[ed] to have been prepared sometime between February 26, 2009 and June 5, 2009," was reasonable. (Tr. 23). Accordingly, the ALJ properly assigned more weight to Dr. Radin's more recent note, opining that the plaintiff did not have a medical condition preventing her from working, than he did to an older note that indicated the plaintiff was disabled.

The ALJ also properly gave Dr. Moalli's November 19, 2008 assessment "little weight" because "Dr. Moalli failed to identify the evidence that he relied on in forming his conclusions." (Tr. 30, 547). The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight will be given to the opinion. 20 C.F.R. §404.1527(d)(4), 416.927(d)(4). As confirmed by Dr.

Nathaniel Kaplan, the state agency reviewing physician, Dr. Moalli's statement did not provide any objective medical evidence or any neurologic diagnoses. (Tr. 59). Moreover, Dr. Moalli did not explain the basis of his opinion, which was inconsistent with his physical examinations and findings on multiple diagnostic studies which were generally either normal or showed only minor abnormalities. (Tr. 294, 296, 298, 307, 336-38, 343, 346, 424-25, 548). Also, opinions from a medical source that a person is disabled "are not medical opinions...but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. §§ 404.1527(e); 416.927(e). Put simply, "[t]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p. Therefore, the ALJ was not required to give controlling weight to Dr. Moalli's opinion that the plaintiff is unable to work.

Finally, the plaintiff claims that the ALJ failed to comply with the treating physician rule by "cherry picking" pieces of information, and trivializing other information, to support a pre-determined conclusion. In particular, the plaintiff faults the ALJ for giving greater weight to the opinion of state agency examining psychiatrist Dr. Pothiawala than to the treatment

records from United Community Family Services. The Court disagrees with the plaintiff's characterization of the record. The ALJ acknowledged the plaintiff's ongoing counseling sessions with a therapist at UCFS, and accurately noted that her global assessment of functioning (GAF) was scored consistently at 60 or above.[1]  (Tr. 22, 24, 29, 356, 358, 452-53, 460, 508-10, 640, 875).  A GAF score of 51-60 reflects moderate symptoms or moderate difficulty in social, occupational, or school functioning, while a GAF score of 61-70 reflects only mild symptoms or some difficulty in social, occupational, or school functioning. See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 34 (4th ed. text revision 2000) (hereinafter, DSM-IV-TR).  However, the plaintiff's treating physician, Dr. Pathman, declined to provide an opinion regarding the plaintiff's mental impairments and limitations, deferring to a psychologist.  (Tr. 30, 998).  The ALJ properly relied on the opinions of Dr. Pothiawala and reviewing psychologist Dr. Ines Schroeder, which, as the ALJ noted, "were consistent with the record as a whole." (Tr. 30, 444).  In sum, the ALJ's opinion did not violate the treating physician rule.

---

[1] Although the ALJ indicated that the plaintiff received only one score slightly below 60, the plaintiff appears to have received a GAF score of 56 on February 3, 2009 and a score of 59 on November 24, 2009. (Tr. 640, 875). However, the ALJ is correct that the GAF score was consistently scored at 60 or above.

### 3. Whether the ALJ's Combination of Impairments Analysis was Supported by Substantial Evidence

The plaintiff next alleges that the ALJ improperly failed to engage in a "combination of impairments" analysis in reaching a decision as to whether or not the plaintiff is disabled, and that the ALJ dismissed any relationship between the plaintiff's physical impairments and her mental impairments as the product of "possible symptom magnification" or somatization. However, the ALJ repeatedly referenced the need to analyze the plaintiff's impairments in combination, acknowledged the plaintiff's contention that she "suffers from a combination of exertional and nonexertional limitations," and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms". (Tr. 20, 24-25, 27). Where, as here, the ALJ stated that he had considered the claimant's impairments in combination and properly examined the medical records, the ALJ's step three and step four analysis "sufficiently assessed the plaintiff's combination of impairments." See DeJesus v. Astrue, No. 3:10-CV-705, 2011 WL 2076447, at *3 (D. Conn. May 26, 2011). Here, the ALJ plainly recognized the plaintiff's allegations of a "combination of exertional and nonexertional limitations" and considered them together in determining Plaintiff's RFC. (Tr. 26-31). "[T]he fact that each element of the record was discussed individually hardly suggests that the totality of the record was

-18-

not considered, particularly in view of the fact that the ALJ referred to 'a combination of impairments' in [his analysis]. DeJesus, 2011 WL 2076447, at *3 (quoting Gooch v. Sec'y of Health and Human Servs., 833 F.2d 589, 591-92 (6th Cir. 1987)). There was no error.

### 4.   Whether the ALJ's RFC Assessment Was Supported by Substantial Evidence

The plaintiff next argues that there is no medical evidence in the record to support the ALJ's RFC assessment. "Residual functional capacity" is defined as "the most you can still do despite your limitations."   20 C.F.R. § 404.1545(a)(1), 416.945(a).  It is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."   SSR 96-8p; Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 60 Fed. Reg. 34474 (July 2, 1996)("regular and continuing basis" means 8 hours per day, 5 days per week, and its equivalence). The plaintiff had the burden of establishing her RFC, which is used at steps four and five of the sequential evaluation to determine whether she could perform past work or other work existing in significant numbers in the national economy.   See 20 C.F.R. §§ 404.1512(c), 416.912(c), 404.1545(a)(5), 416.945(a)(5), 404.1560(c)(2), 416.960(c)(2); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003).

The plaintiff contends that the RFC assessment is not supported by the medical evidence in the record and conflicts with the limitations suggested by Dr. Pathman. As explained above, substantial evidence supports the ALJ's rejection of these limitations. As the ALJ noted, the significant limitations contained in Dr. Pathman's opinion were inconsistent with his treatment notes, which "fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact as significantly limited as described by the doctor." (Tr. 29).

In addition, two state agency reviewing physicians and one of the plaintiff's treating sources, Dr. Radin, opined that the plaintiff did not have a significant medical condition that prevented her from working. (Tr. 61, 430-31, 566). The ALJ considered the entire record, as a whole, in determining the plaintiff's RFC. The ALJ carefully stated her reasons for rejecting Dr. Pathman's opinion regarding the plaintiff's physical limitations, finding her more limited than the state agency reviewing physicians, but less limited than Dr. Pathman. The ALJ was free "to piece together the relevant medical facts from the findings and opinions of multiple physicians." See DiMaggio v. Astrue, No. 5:10-cv-172, 2011 WL 4748280 at *11 (D. Vt. Oct. 6, 2011)(quoting Evangelista v. Sec'y of Health and

Human Servs., 826 F.2d 136, 144 (1st Cir. 1987)).  Substantial
evidence supports the ALJ's decision.

### 5.   Whether the ALJ Properly Evaluated Plaintiff's Credibility and Claims of Pain

The plaintiff also claims that the ALJ's analyses of her
credibility and claims of pain were inadequate.   An  ALJ  is
required  to  follow  a  two-step  process  in  assessing  the
credibility  of  a  claimant's  subjective  complaints,  including
pain.  First, the ALJ must determine whether the record supports
a  determination  that  the  claimant  possesses  any  medically
determinable  impairments  that  could  reasonably  be  expected  to
produce  her  alleged  symptoms.    20  C.F.R.  §§   404.1529(b),
416.929(b); SSR 96-7p.  Once, as here, the ALJ has determined
that  a  claimant  has  an  impairment  that  could  reasonably  be
expected to produce her alleged symptoms, the ALJ must assess the
credibility of the claimant's complaints regarding "the intensity
and persistence" of the claimant's symptoms so that the ALJ "can
determine how [the claimant's] symptoms limit [her] capacity for
work." 20 C.F.R. §§  404.1529(c)(1), 416.929(c)(1); SSR 96-7p.  In
determining  the  credibility  of  a  claimant's  statements,  the  ALJ
"must consider the entire case record, including the objective
medical evidence, the individual's own statements about symptoms,
statements  and  other  information  provided  by  treating  or
examining  physicians...and  any  other  relevant  evidence  in  the

case record." SSR 96-7p. Thus, "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective evidence." Id.

In short, the ALJ has the "discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Martins v. Chater, No. 96-6085, 1996 U.S. App. LEXIS 26343, at *3 (2nd Cir. October 8, 1996) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). In other words, the ALJ is not required to take the claimant's subjective complaints at face value. However, the ALJ's finding on credibility "must contain specific reasons...supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The plaintiff, through counsel, indicated that she "suffers from a combination of exertional and nonexertional limitations that would prevent her from performing and sustaining even the sedentary level of work." (Tr. 238). As the ALJ summarized, the

-22-

plaintiff testified that she is able to walk five minutes but has difficulties with inclines and stairs, can stand for five to ten minutes but frequently changes position, and is able to lift up to ten pounds. (Tr. 27). The plaintiff further contends that she experiences painful tremors two to six times per month that affect her whole body and typically last two, and occasionally three, hours. Id. The plaintiff states she experiences a rapid heartbeat, including four to five episodes the week of the hearing, which causes chest pain accompanied by sweating, neck and shoulder pain, and left arm numbness lasting ten to fifteen minutes. Id. In addition, the plaintiff testified her vascular problems cause burning and loss of sensation in her legs, discoloration and left hand numbness, and left foot tingling. Id. The plaintiff also testified she experiences confusion and gets lost easily, and her anxiety and depression cause mood swings and frequent crying episodes. Id.

The plaintiff contests the ALJ's credibility finding, including the conclusion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment." (Tr. 11). She also argues that the ALJ did not perform an adequate analysis of her claims of pain. As addressed

-23-

below, the ALJ's credibility determination and analysis of the plaintiff's claims of pain were sufficient and supported by substantial evidence.

Contrary to the arguments of the plaintiff, the ALJ's credibility determination included a detailed explanation for her finding that the plaintiff's statements about the limiting effects of her impairments were less than fully credible. (Tr. 28-31). In the process, the ALJ properly considered the factors laid out in 20 C.F.R 404.1529(c) and SSR 96-7p. For example, the ALJ found that the plaintiff's alleged symptoms were inconsistent with her reported daily activities, generally benign treatment records and reports to physicians. (Tr. 28-31). The ALJ found that "the [plaintiff] has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 28). In particular, the ALJ noted that, despite her claimed limitations, the plaintiff "lives alone and has reported the following daily activities: household cleaning, reading, writing letters, performing a little yard work and taking care of her three dogs and two cats." (Tr. 28, 651, 1099, 1101). The ALJ reasonably concluded that the plaintiff's "daily activities have, at least at times, been somewhat greater than the claimant has generally reported." (Tr. 28). See Schacht v. Barnhart, No. 3:02-CV-1483

-24-

(DJS)(TPS), 2004 WL 2915310 at *10 (D. Conn. Dec. 17, 2004)(daily child care and other activities inconsistent with claims of disabling pain).

The ALJ also properly took the objective medical records into consideration and cited them as reasons for not finding the plaintiff to be entirely credible.  Objective medical evidence is a useful indicator to assist in assessing the intensity and limiting effects of alleged symptoms.  See 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  As the ALJ explained, "the severity of symptoms described by the claimant [was] not documented in the treatment records."  (Tr. 28).  For example, the ALJ noted that:

> the plaintiff's "descriptions of whole body tremors two to six times a month involving her whole body and typically lasting 2 to 3 hours is not supported by the record. The claimant testified that Dr. Radin is treating her tremors yet on February 26, 2009, Dr. Radin noted only mild postural tremor and on June 5, 2009 and on multiple occasions when she was seen by an APRN from Dr. Radin's practice between Oct. 26, 2009 and Mar. 18, 2010, for Vitamin B injections, she made no complaints of tremor.

Id.  In addition, a note prepared by Dr. Radin, likely between February 26, 2009 and June 5, 2009, stated that the plaintiff does not have a significant medical condition that would prevent

her from working.  (Tr. 566).  Moreover, on October 13, 2009,[2] a treating APRN noted that she spoke with Dr. Pathman, who "does express some concerns over [the plaintiff's] behaviors regarding possible illness.  It seems that if she does not get what she wants from one provider, she moves on to another provider."  Id. The ALJ indicated that "this does not enhance the claimant's credulity."  (Tr. 28).

The medical records also are not consistent with the plaintiff's claims regarding the severity of her cardiac episodes and Raynaud's Disease.  The ALJ noted that the plaintiff reported episodes of a rapid heart rate on April 30, 2010, but she did not report that she suffered from other accompanying symptoms, such as the shoulder and neck pain that she referenced in her testimony.  (Tr. 27, 29).  Furthermore, the ALJ found a similar inconsistency between the plaintiff's reports of her symptoms from Raynaud's Disease and her reports to her providers.  (Tr. 29).  The plaintiff testified that the condition affected both of her hands, but her left more than right, and that it produced numbness, tingling, and a change in color.  (Tr. 1111-12).  The plaintiff visited rheumatologists Naomi Rothfield and Dominic Demello in September and October 2009.  (Tr. 877-881).  Dr. Rothfield noted that the plaintiff was intact neurologically, and

---

[2] The ALJ mistakenly identified the date as December 20, 2009. (Tr. 28). This was harmless error.

an extensive rheumatological workup failed to reveal any worrisome abnormalities except a positive ANA with a titer of 320 (which was described as within normal limits). (Tr. 29, 877-879). Drs. Rothfield and Demello also noted that, from a "rheumatologic perspective, the [plaintiff] does not have any acute complaints." (Tr. 877). The doctors recommended that she wear warm gloves to cut down on the incidence of Raynaud's, and stressed that she stop smoking. (Tr. 29, 877-878).

Furthermore, the plaintiff's claimed mental limitations were inconsistent with several of her GAF scores, which were consistently assessed as 60 or above, reflecting only mild or moderate symptoms of mental impairment. (Tr. 29); see DSM-IV-TR at 34. As this Court noted in McCants v. Astrue, No. 3:09-cv-01830-VLB, 2010 WL 4363423 at *7-8 (D. Conn. Oct. 21, 2010), a GAF score of 60 is inconsistent with a claimed "serious limitation" in ability to complete a normal workday and workweek, because "[s]erious psychological symptoms would be expected to lead to a [GAF] score indicating serious rather than moderate symptoms."). Accordingly, the ALJ correctly identified the inconsistency between the plaintiff's GAF scores and her claimed mental limitations.

Substantial evidence supports the ALJ's conclusion that "the claimant's statements concerning the intensity, persistence and

limiting effects of these symptoms are not credible to the extent they are inconsistent with...[her] residual functional capacity assessment." (Tr. 27). The ALJ's opinion contained specific reasons for her finding on the plaintiff's credibility and was adequately supported by the evidence in the record. The opinion also contained substantial evidence to support the ALJ's finding that the plaintiff's pain was not as limiting as she alleged. (Tr. 28-31). "[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). There was no error.

## III. CONCLUSION

For the reasons set forth herein, the ruling of the ALJ that the plaintiff is not disabled is supported by substantial evidence in the record. Therefore, the plaintiff's motion to reverse the decision of the ALJ or, in the alternative, to remand the case for further proceedings **(Dkt. #21)** should be **DENIED.** The defendant's motion for an order affirming the decision of the Commissioner **(Dkt. #27)** should be **GRANTED.** 28 U.S.C. § 636 (b)(1)(A).

The parties may timely seek review of this recommended ruling in accordance with Rule 72(b) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 72(b).  Failure to do so may bar further review.  28 U.S.C. § 636(b)(1)(B); <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989).

**Dated at Hartford, Connecticut this <u>14th</u>  day of August, 2012.**


                                        <u>**/s/ Thomas P. Smith**</u>
                                        **THOMAS P. SMITH**
                                        **UNITED STATES MAGISTRATE JUDGE**